UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

KAREN LECKIE,

    Plaintiff,

    v.

BOARD OF EDUCATION OF
MONTGOMERY COUNTY,

    Defendant.

Civil Action No. TDC-23-0299

**MEMORANDUM OPINION**

Plaintiff Karen Leckie has filed this civil action against Defendant the Board of Education of Montgomery County, Maryland ("the Board") alleging disability discrimination and retaliation in violation of the Rehabilitation Act, 29 U.S.C. §§ 701–796 (2018), during her employment with the Montgomery County Public Schools ("MCPS"), which are operated by the Board. The Board has filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

In August 2011, Leckie was hired to serve as a Reading Specialist in MCPS. According to Leckie, she suffers from post-traumatic stress disorder ("PTSD"), and her condition was known to her immediate supervisors, school principals, and the MCPS disability coordinator. Leckie received various accommodations for her PTSD. However, she alleges that she experienced discrimination and harassment by her supervisors and co-workers because of her disability. For example, during the 2016-2017 school year, Karen Carisio, an MCPS supervisor, allegedly

required Leckie to carry a walkie-talkie, in violation of Leckie's accommodations. Carisio and Sandra Reece, another co-worker, allegedly "expressed that individuals with disabilities should not be allowed to work in schools." Am. Compl. ¶ 22, ECF No. 14.

In September 2016, Leckie applied for long-term leave due to her disability, but the MCPS disability coordinator told her that she should wait until 2017 before seeking a placement within the school system. When she sought such a position at the beginning of 2017, the disability coordinator was unable to find her a suitable assignment. Though Leckie received approval to take sick leave from November 28, 2016 through January 13, 2017, the Sick Leave Bank Committee advised her that she would not receive further compensation until she applied for disability retirement. In May 2017, Leckie expressed an interest in returning to work in a position that could support her requested accommodations for her PTSD, which included providing a fixed lunch break and other breaks, allowing for breaks in a comfortable space to allow Leckie to use relaxation techniques, limiting loud and distracting noises during collaborations with others, providing backup coverage during school assemblies, and limiting her attendance at outside school events. However, Leckie remained on unpaid leave until October 2017, when she was assigned to work at Twinbrook Elementary School and Georgian Forest Elementary School. According to Leckie, while on this assignment, "she performed her essential job functions between 2017 and 2021." Id. ¶ 38.

Leckie alleges that while in this position, she experienced harassment from supervisors. Specifically, Leckie asserts that Matt Devan targeted her by "increasing oversight of only disabled employees" and criticizing her "repeatedly over minor issues, including the number of posters in her [class]room." Id. ¶¶ 39-40. In February 2021, Leckie was denied lunch and bathroom breaks. From February to June 2021, though Leckie had an unruly student who yelled and hit other

students, thus exacerbating Leckie's PTSD, her daily calls for assistance with the student went unheeded. In March 2021, although the school principal was aware that Leckie had PTSD and needed accommodations, he denied her request to have another teacher supervise her students during school sessions when there was a marching band in the school, and when there was an indoor dance party with loud music. Leckie also asserts that in March 2021, the principal forced her to "take her lunch while going through 90-minute trainings," in violation of her needed accommodations relating to lunch and bathroom breaks. *Id.* ¶ 51. Leckie further alleges that when teachers had Zoom meetings to discuss announcements and teaching materials, she was not admitted to those sessions until the last 10 to 15 minutes of the meeting, after the important information had already been discussed.

In June 2021, Leckie was placed on a performance improvement plan ("PIP"), even though it was not a school year in which she was scheduled to receive an evaluation. At some point, Leckie informed the principal that she was looking for a position at a different school, after which the PIP was rescinded. According to Leckie, this sequence of events effectively compelled her to work at a different school, which resulted in a longer commute and "other hardships that she could not maintain." *Id.* ¶ 58. As a result, on August 24, 2021, Leckie submitted her resignation, which she deems to be a constructive discharge because she was "forced to retire due to the harassment from Defendant." *Id.* ¶ 59.

On February 2, 2023, Leckie filed the original Complaint in this case. In the presently operative Amended Complaint, Leckie asserts four claims against the Board under the Rehabilitation Act, 29 U.S.C. § 794(a), consisting of the following numbered counts: (1) a hostile work environment; (2) constructive discharge; (3) a failure to provide a reasonable accommodation; and (4) retaliation.

DISCUSSION

In the Motion to Dismiss, the Board asserts that Leckie's claims premised on acts occurring prior to February 2, 2021 are barred by the applicable statute of limitations, that Leckie has failed to state a claim under the Rehabilitation Act, and that Leckie cannot obtain punitive damages against the Board.

## I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## II. Statute of Limitations

As an initial matter, the Board seeks dismissal of any claims based on acts that occurred prior to February 2, 2021, two years before Leckie filed the original Complaint, on the grounds that they are barred under the applicable statute of limitations. Leckie agrees that a two-year limitations period applies to claims under the Rehabilitation Act. "When a federal statute, like the

Rehabilitation Act, does not set forth a statute of limitations, federal courts 'borrow the state statute of limitations that applies to the most analogous state-law claim.'" *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 659 (4th Cir. 2018) (quoting *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017)). The United States Court of Appeals for the Fourth Circuit has held that the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–601 to 20–1203 (West 2021), is the analogous state statute, and that MFEPA's two-year limitations period therefore applies to Rehabilitation Act claims brought in Maryland. *See id.* § 20–1013(a)(1)(iii); *Ott*, 909 F.3d at 660.

For a hostile work environment claim, the continuing violation doctrine applies, under which a claim is timely "so long as an act contributing to that hostile environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (addressing a claim under Title VII of the Civil Rights Act of 1964); *see Hill v. Hampstead Lester Morton Court Partners LP*, 581 F. App'x 178, 180-81 (4th Cir. 2014) (applying the continuing violation doctrine to a Rehabilitation Act claim). On such a claim, the court may consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 105. Here, the Amended Complaint asserts multiple acts that arguably contributed to the alleged hostile work environment within the limitations period, specifically, that Matt Devan, among other supervisors, harassed Leckie once she returned from leave throughout February 2021, and that she was denied lunch and bathroom breaks during the same time period. She has also alleged that in March 2021, she was forced to attend events with loud noises in violation of her needed accommodations, and that she was placed on a PIP at the close of the 2020-2021 school year that was removed only when she informed the

principal that she was looking for a position with a different school. The hostile work environment claim is therefore timely.

As to the constructive discharge claim, Leckie's resignation, which she alleges to have been compelled by the harassment, occurred on August 24, 2021, within the two-year limitations period. *See Green v. Brennan*, 578 U.S. 547, 555 (2016) (holding that the limitations period for a constructive discharge claim begins to run "only after a plaintiff resigns"). That claim is therefore timely.

Finally, as for the failure to accommodate and retaliation claims in Counts 3 and 4, although claims based on "discrete acts of discrimination or retaliation that occur outside the statutory time period" are time-barred, *see Nat'l R.R. Passenger Corp.*, 536 U.S. at 105, Leckie has disavowed any such claims based on acts occurring before February 2, 2021. Rather, Leckie confirms that the factual allegations relating to events occurring prior to February 2, 2021 "are chiefly background information for the court to understand the history between the parties as it relates to her claims of disability discrimination and hostile work environment." Opp'n at 3, ECF No. 17. Generally, the Court may consider facts and events occurring outside the limitations period as relevant to timely claims, even if those events could not be the subject of a timely claim. *See United Air Lines v. Evans*, 431 U.S. 553, 558 (1977) (stating that events beyond the statute of limitations, while not actionable in and of themselves, may still "constitute relevant background evidence in a proceeding in which the status of a current practice is at issue"); *Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 47-48 (1st Cir. 2015) (affirming a jury instruction permitting the jury to "take the time-barred evidence into account for such purposes as evaluating motive, intent, or context" in considering otherwise timely discrimination and retaliation claims). Based

6

on Leckie's clarification, Counts 3 and 4 are not time-barred but will be limited to claims based on discrete acts occurring since February 2, 2021.

### III. Hostile Work Environment

In Count 1, Leckie alleges a claim of a hostile work environment based on her allegations that her supervisors and co-workers harassed her due to her disability from at least September 2016 through August 2021. The Board argues that Leckie fails to state a plausible hostile work environment claim because she has not alleged facts showing that the harassment was sufficiently severe or pervasive as to alter the conditions of her employment.

A hostile work environment claim asserted under the Rehabilitation Act is analyzed under the same standard applicable to a hostile work environment claim under Title VII. *See Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009). "A hostile work environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish a claim of a hostile work environment based on disability, a plaintiff must show that the alleged conduct (1) "was unwelcome"; (2) "resulted because of" the plaintiff's disability; (3) "was 'sufficiently severe or pervasive' to alter the conditions" of employment; and (4) "was imputable" to the plaintiff's employer. *Pueschel*, 577 F.3d at 564-65 (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 338 (4th Cir. 2003)). The severe or pervasive element "has both subjective and objective components." *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175-76 (4th Cir. 2009).

As to the objective component, a court "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* To clear the "high bar in order to satisfy the severe or pervasive test," a plaintiff "must show that the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id.* at 176 (quoting *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc)). For example, in *Central Wholesalers, Inc.*, the court concluded that that a genuine dispute of material fact existed as to plaintiff's hostile work environment claim under Title VII where plaintiff was "regularly referred to" using derogatory gender-based epithets and subjected to racial epithets "pretty much everyday." *Cent. Wholesalers, Inc.*, 573 F.3d at 175-76. By contrast, in *Perkins v. International Paper Co.*, 936 F.3d 196 (4th Cir. 2019), the court affirmed the district court's grant of summary judgment for the employer on a Title VII hostile work environment claim where the plaintiff's factual allegations regarding disparate treatment between African American employees and white employees in the workplace, "while no doubt serious to [the plaintiff]," could not "reasonably be described as either frequent, physically threatening or humiliating." *Id.* at 209.

Without addressing the other required elements of a hostile work environment claim, the Court finds that Leckie's factual allegations are not sufficient to support a finding that the objective component of the severe or pervasive element is satisfied. Leckie's underlying allegations in support of her hostile work environment claim consist of criticisms from supervisors and co-workers regarding her need for leave, her supervisor Karen Carisio's requirement that Leckie wear a walkie-talkie, increased oversight from her supervisor, Matt Devan, the denial of various requested accommodations, and the institution of a PIP. Although Leckie generally alleges that Devan "would harass" her "repeatedly over minor issues," the only specific examples of harassing conduct or statements she has provided are her claim that he criticized her lack of posters on her

classroom wall, that Carisio required her to wear a walkie-talkie in violation of her accommodations, and that in approximately 2016, two co-workers "expressed that individuals with disabilities should not be allowed to work in schools." Am. Compl. ¶ 22. These incidents are not sufficiently severe or pervasive to support a hostile work environment claim. *See Cent. Wholesalers, Inc.*, 573 F.3d at 175-76; *see Buchhagen v. ICF International, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (stating that allegations of a supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harping on a mistake" by the plaintiff, "making snide comments" to the plaintiff, "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing" plaintiff's use of leave and lack of compliance with directives fall "far short of being severe or pervasive enough to establish an abusive environment" (internal alterations omitted)).

The remainder of Leckie's allegations largely describe personnel actions in which supervisors made decisions with which she disagreed, including the decisions to deny her requests for accommodations to have other teachers supervise her class during activities involving loud noises, the denial of her request for lunch breaks without the need to conduct simultaneous training, the failure to provide assistance when she had an unruly student in her classroom, and the decision to place her on a PIP. While some of these decisions may provide support for Leckie's failure to accommodate and retaliation claims, *see infra* parts V-VI, they do not involve the kind of humiliation, ridicule, or intimidation that generally characterizes severe or pervasive harassment. *See, e.g., Perkins*, 936 F.3d at 209 (concluding that the plaintiff had not established severe or pervasive harassment based on the allegations that his request for retroactive application of benefits was denied, the employer disparately questioned African American employees regarding

overtime, the employer disparately enforced workplace rules and practices against African American employees, and the employer denied the plaintiff's promotion requests).

Because Leckie has not provided allegations that she was subjected to a workplace "permeated with discriminatory intimidation, ridicule, and insult" directed at her because of her disability, *see Boyer-Liberto*, 786 F.3d at 277, she has failed to allege the kind of severe and pervasive harassment needed to establish a hostile work environment claim. The Court will grant the Motion as to Count 1.

### IV. Constructive Discharge

The Board also seeks dismissal of the constructive discharge claim in Count 2, in which Leckie contends that she was effectively forced to leave her position because of the allegedly hostile work environment and the fact that she felt compelled to transfer to another school to have the PIP rescinded.

When a constructive discharge claim is based on an allegedly hostile work environment, the plaintiff must "show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004). To prove such a claim, "a plaintiff must show 'something more' than the showing required for a hostile work environment claim." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Penn. State Police*, 542 U.S. at 147). Thus, where Leckie has fails to state a plausible hostile work environment claim, the Court necessarily concludes that she has also failed to state a constructive discharge claim based on the allegedly hostile work environment.

To the extent that Leckie arguably has asserted that the constructive discharge was caused by a discrete action such as the institution of the PIP, such a claim fails. A plaintiff can establish a constructive discharge claim by showing that, without regard to whether the legal standard for a

hostile work environment has been established, the "employer 'deliberately ma[de] an employee's working conditions intolerable, and thereby force[d] him to quit.'" *James v. Booz Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)). Such a constructive discharge can occur when there was "a calculated effort to pressure" the plaintiff "into resignation through the imposition of unreasonably harsh conditions" that are "so intolerable as to compel a reasonable person to resign." *Id.* A constructive discharge can also occur when the "employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns." *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002); *see Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978 (10th Cir. 1996) ("This court has recognized that an employee can prove a constructive discharge by showing that she was faced with a choice between resigning or being fired.").

Although Leckie has asserted that she was able to have the PIP rescinded by volunteering to transfer to another school, her claims about the inconvenience of working at the other school do not rise to the level necessary to constitute constructive discharge. Moreover, she has provided no facts showing that she was actually compelled to change schools, as she has not alleged that she was ever told that the PIP would result in a recommendation of termination or any other adverse action. Where Leckie has not alleged facts showing that she faced intolerable working conditions that would compel a reasonable person to resign, or that she would have been terminated had she remained at her school, the Court will grant the Motion as to Count 2.

### V. Failure to Accommodate

The Board also seeks dismissal of Count 3, in which Leckie alleges that the Board violated the Rehabilitation Act by failing to provide her with "reasonable accommodations allowing her to limit exposure to startling noises and to take breaks to address her PTSD" between January and

May 2021. Am. Compl. ¶ 75. Consistent with Leckie's representation this claim is based only on acts occurring within the limitations period, *see supra* part II, the Court construes this claim as based on the following two incidents: (1) Leckie's allegation that in March 2021, the principal denied her request that she not be required to attend "school sessions with a marching band inside the school" and "an indoor dance party with a loud DJ," and that a different teacher supervise her students during those activities, on the grounds that those events would aggravate her PTSD, *id.* ¶¶ 49-50; and (2) Leckie's allegation that despite her request for fixed lunch and bathroom breaks due to her PTSD, she was "forced to take her lunch while going through 90-minute trainings" *id.* ¶ 51.

The Rehabilitation Act provides that no "otherwise qualified individual with a disability" shall, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," which includes "a local education agency . . . or other school system." 29 U.S.C. § 794(a), (b)(2)(B). Employment discrimination claims brought under 29 U.S.C. § 794(a) are evaluated using the same standards as those applied under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (2018). 29 U.S.C. § 794(d). Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [a] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual" is "an individual who, with or without reasonable accommodation, can

perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

To establish a *prima facie* case for a failure-to-accommodate claim under the Rehabilitation Act, a plaintiff must show that (1) the plaintiff qualifies as an "individual with a disability," as defined in 29 U.S.C. § 705(20); (2) the defendant had notice of the disability; (3) the plaintiff "could perform the essential functions" of the job "with a reasonable accommodation"; and (4) the defendant "refused to make any reasonable accommodation." *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 414 (4th Cir. 2015). In the Motion, the Board primarily argues that Leckie's claim must be dismissed because she "fails to identify the essential functions of her position and which essential functions required an accommodation," and she "fails to allege that in the absence of such accommodations, she was unable to perform the essential functions of her job." Mot. Dismiss at 12, ECF No. 15-1.

Leckie alleges sufficient facts to state a plausible failure-to-accommodate claim. Leckie alleges, and the Board does not contest, that she suffers from PTSD and that PTSD can qualify as a "disability" under the Rehabilitation Act. *See* 29 U.S.C. § 705(9) (defining "disability" as "a physical or mental impairment that constitutes or results in a substantial impediment to employment," or as defined in 42 U.S.C. § 12102); 42 U.S.C. § 12102(1) (defining "disability" under the ADA, in part, as "a physical or mental impairment that substantially limits one or more major life activities of such individual"); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (noting, in concluding that social anxiety constituted a "disability" under 42 U.S.C. § 12102(1)(A), that the "question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis"). The Board also does not contest that it had notice of her disability. Where Leckie alleges in her Amended Complaint that she "performed

her essential job functions between 2017 and 2021," Am. Compl. ¶ 38, the facts alleged show that she remained on the job throughout that time period without a break in service, and without any claim by the Board that she was not performing in a satisfactory manner until the PIP was instituted in June 2021, the Court can and will infer for purposes of the Motion that Leckie could perform the essential functions of her job with a reasonable accommodation. Finally, viewed in the light most favorable to Leckie, the two incidents described above fairly allege that the school principal failed to accommodate requests for reasonable accommodations of Leckie's PTSD. The Court will therefore deny the Motion as to Count 3.

## VI. Retaliation

In Count 4, Leckie alleges that she was subjected to unlawful retaliation when her supervisors denied her requests for accommodations, excluded her from portions of teacher meetings on Zoom, and placed her on a PIP.

A retaliation claim under the Rehabilitation Act is subject to the same standard as a retaliation claim under the ADA. *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 n.6 (4th Cir. 2016). Under the ADA, to establish a *prima facie* case of retaliation, a plaintiff must establish that (1) the plaintiff "engaged in a protected activity"; (2) the employer "acted adversely" to the plaintiff; and (3) the "protected activity was causally connected" to the adverse action. *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). On the first element, for purposes of a retaliation claim, an employee's request for reasonable accommodations is a protected activity. *See Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) ("The record shows . . . protected activity—[plaintiff's] request for an accommodation."). As to the second element, the action taken against the plaintiff must be "materially adverse," in that "it well might have dissuaded

a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

The Board does not dispute that Leckie engaged in protected activity but instead argues that Leckie fails to state a claim for retaliation because a denial of a request for a reasonable accommodation cannot independently constitute a materially adverse action; the identified alleged acts of retaliation were not materially adverse actions; and Leckie has not established a causal link between her requests for reasonable accommodations and the allegedly adverse actions.

To the extent that Leckie's retaliation claim is based on the premise that the denials of her requests for reasonable accommodations were themselves materially adverse actions, the Court finds that they were not. Other judges in this District have held that the denial of a request for a reasonable accommodation, on its own, cannot constitute a materially adverse action under *Burlington Northern* sufficient to sustain a retaliation claim. *See, e.g., Wilson v. Montgomery Cnty. Bd. of Trustees*, No. PWG-17-2784, 2018 WL 4300498, at *9 (D. Md. Sep. 10, 2018) (concluding that a denial of a request for an accommodation is not a materially adverse action for purposes of an ADA claim in part because it "is likely to prompt—not dissuade—an employee to file an administrative claim"); *Johnson v. Md. Transit Admin.*, No. CCB-19-2523, 2021 WL 809768, at *5 (D. Md. Mar. 2, 2021) (rejecting the argument that the denial of a request for a reasonable accommodation was an "adverse action" that could support a retaliation claim under the Rehabilitation Act); *Sacks v. Bd. of Educ. of Balt. Cnty.*, No. RDB-21-0968, 2021 WL 5233752, at *6 (D. Md. Nov. 9, 2021) (citing *Johnson*). *But see Dones v. Brennan*, 147 F. Supp. 3d 364, 370-71 (D. Md. 2015) (finding that the denial of a request for a swivel chair to address the plaintiff's disability was a materially adverse action for purposes of a retaliation claim under the Rehabilitation Act).

15

In reaching this conclusion, courts have reasoned that if "the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled." *Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013); *see also Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015) (rejecting the plaintiff's claim that a delay in granting a request for accommodations in the form of telework and a private office were materially adverse actions for purposes of a Rehabilitation Act retaliation claim because "this was the subject of plaintiff's failure to accommodate claim, and so it does not supply grounds for a separate retaliation claim"). The Court agrees that allowing a retaliation claim in which the denial of a request for a reasonable accommodation is the materially adverse action would effectively duplicate the failure-to-accommodate claim. Therefore, the Motion will be granted as to Count 4 to the extent that Leckie's retaliation claim is based on the argument that the denials of Leckie's requests for reasonable accommodations constituted the retaliatory actions.

The Court, however, concludes that Leckie's assertion that she was subjected to a PIP, and the surrounding circumstances, sufficiently alleges a materially adverse action. Though the Fourth Circuit has not stated whether placement on a PIP constitutes a materially adverse action for purposes of a retaliation claim, other circuits have held that a PIP standing alone does not constitute such an action while acknowledging that it could so qualify with additional facts and circumstances. *See Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607-08 (7th Cir. 2022) (stating that PIPs, "are not, without more," materially adverse actions and finding that the PIP in question was likely not "onerous enough to constitute a materially adverse action"); *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1226 (10th Cir. 2022) (noting that a PIP may be "an adverse employment action . . . if it effects a significant change in the plaintiff's employment status").

The Court does not agree that a PIP, particularly one imposed on a government employee, would not "dissuade[] a reasonable worker from making or supporting a charge of discrimination," *Burlington N.*, 548 U.S. at 68, particularly when a PIP is generally understood to be a prerequisite to the firing of a public employee. Even if more is required to establish a materially adverse action, in this instance, Leckie has asserted that she received the PIP during a year in which she otherwise was not scheduled to receive a performance evaluation, which would fairly raise greater concern about whether the PIP was retaliatory. She has also alleged that the PIP was not removed until she informed the principal that she was looking for a position with a different school, which provides a basis to support the inference that the PIP was imposed as a tool to force Leckie out of the school. The Court also considers the allegation that Leckie was excluded from parts of Zoom meetings, which while possibly insufficient on its own to constitute a materially adverse action, helps to place in context the PIP and its possible chilling effect. *See id.* at 69 (contrasting a "supervisor's refusal to invite an employee to lunch," which is not a materially adverse action, with the exclusion of "an employee from a weekly training lunch that contributes significantly to the employee's professional advancement," which can be a materially adverse action). Viewing these allegations in the light most favorable to Leckie, the Court concludes that Leckie's PIP and its surrounding circumstances may have dissuaded a reasonable worker from making a charge of discrimination, as required for a retaliation claim. *See id.* at 68.

Finally, Leckie has also plausibly alleged a causal link between her request for reasonable accommodations and the materially adverse action. "[E]stablishing a 'causal relationship' at the *prima facie* stage is not an onerous burden." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (quoting *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018)). At the motion-to-dismiss stage, a causal connection can be deemed to be sufficient when the employer

takes the materially adverse action "shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogated on other grounds*, *Foster v. Univ. of Maryland–E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). "[T]here is no bright-line rule for temporal proximity." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022). Such causation has been sufficiently established when the materially adverse action occurs within a few weeks or months of the protected activity. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (noting, in evaluating a Title VII retaliation claim, that courts have found a causal connection when the adverse action was taken four months after the filing of a discrimination complaint and finding such causation for purposes of a *prima facie* case of retaliation when the plaintiff was demoted four months after his protected activity).

Although in *Holloway*, the court stated that "in previous cases we have held that 'a three-month period between the protected activity and the adverse action,' without more, 'does not support a finding that there is a causal link,'" it went on to find that the termination of the plaintiff three months after he filed an equal employment opportunity ("EEO") complaint could constitute a materially adverse action based on the principle that "intervening events can bridge what would otherwise be a prohibitively long temporal gap." *Id.* (quoting *Roberts*, 998 F.3d at 127) (finding that a supervisor's statement that he was aware of the EEO complaint two months before the termination was such an intervening event). Here, the PIP was instituted in June 2021, approximately three months after the requests for reasonable accommodations. *See Carter*, 33 F.3d at 460. To the extent necessary, Leckie has alleged other problematic actions by supervisors after her March 2021 requests for reasonable accommodations, including denying her requested accommodations and excluding Leckie from parts of Zoom meetings. *See Holloway*, 32 F.4th at

300. Viewing the allegations in the light most favorable to Leckie, the Court finds that Leckie has alleged a valid retaliation claim and will deny the Motion as to this claim.

## VII. Punitive Damages

Finally, the Board argues that punitive damages are not recoverable against the Board on Rehabilitation Act claims. In response, Leckie concedes that the Board is not subject to punitive damages and agrees that the request for punitive damages should be stricken. The Court will therefore grant the Motion as to this issue and strike Leckie's request for punitive damages.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to Count 1, Count 2, and any claim included in Count 4 (retaliation) that the denials of Leckie's requests for reasonable accommodations were retaliatory. The Motion will also be granted as to Leckie's request for punitive damages, which will be stricken. The Motion will otherwise be denied. A separate Order shall issue.

Date: December 19, 2023

THEODORE D. CHUANG
United States District Judge